| Vickers v Graham |
|:---:|
| 2025 NY Slip Op 31554(U) |
| May 1, 2025 |
| Supreme Court, Onondaga County |
| Docket Number: Index No. 004244/2025 |
| Judge: Kevin P. Kuehner |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At a term of the of the Supreme Court of the State of New York, held in and for the County of Onondaga on April 29, 2025.

STATE OF NEW YORK
COUNTY OF ONONDAGA     SUPREME COURT

_____

SUSAN T. VICKERS and MATTHEW J. BEADNELL,

                             Petitioners,

              -vs-

ROBERT G. GRAHAM, MARIA ROSARIA SCHNUR, DANNY D. PARRISH, PATRICIA A. ZANGARI, and the ONONDAGA COUNTY BOARD OF ELECTIONS,

                             Respondents.

_____

**DECISION and ORDER**
**Motion No. 1**

Index No.: 004244/2025

**APPEARANCES**:

ZIMMERMAN LAW OFFICE
  Co-Counsel for Petitioners
602 Standish Drive
Syracuse, New York 13224

BOUSQUET HOLSTEIN, PLLC
  Co-Counsel for Petitioners
110 W. Fayette St.
Syracuse, New York 13202

YOUNG LAW OFFICE, PLLC
  Counsel for the individual Respondents
7659 N. State St.
Lowville, New York 13367

ONONDAGA CO. DEPT. OF LAW
  Counsel for Respondent Bd. of Elections
421 Montgomery St.
Law Dept. Civic Center, 10th Fl.
Syracuse, New York 13202

**OF COUNSEL**:

Aaron M. Zimmerman, Esq.

Gary J. Lavine, Esq.

Michael F. Young, Esq.

Erin W. Fair, Esq.
*Senior Deputy County Attorney*

[* 1]

**KEVIN P. KUEHNER, J.S.C.:**

Currently before the Court is an application brought by Petitioners, Susan Vickers and Matthew Beadnell, as an Order to Show Cause, which was signed by the Court on April 24, 2025, and seeks an Order, pursuant to Article 16 of the Election Law and Article 78 of the CPLR, that requires Respondent, the Onondaga County Board of Elections ("Board of Elections" or "the Board"), to place their names as candidates on the upcoming primary ballot for Conservative delegates from the 126th Assembly District for the Judicial Nominating Convention of Supreme Court candidates in the Fifth Judicial District. Respondents Robert Graham, Maria Rosaria Schnur, Danny Parrish, and Patricia Zangari are individuals who have also petitioned to be Conservative delegates from the 126th Assembly District for the Judicial Nominating Convention.

On April 22, 2025, the Board of Elections sustained its preliminary determination that invalidated the Petitioners' Designating Petition. Petitioners allege that this determination was made in error. On April 27, 2025, the respective Respondents filed and served an Answer to the Petition and the Board of Elections filed an opposition to the Order to Show Cause. The matter came to be heard on April 29, 2025, with Petitioners, Respondents, and respective counsel present. The Board of Elections submitted a package of documents to the Court, which the Court marked for identification as Court's Exhibit A. The package contains the original designating petition consisting of a coversheet, 10 pages of signatures, the original general objection and specific objections filed by Respondents, Petitioners' response to the general/specific objections, and a USB drive containing an audio recording of the hearing conducted on April 22, 2025. In addition, Petitioners requested a judicial subpoena for certain voter registration records, which was executed on April 29, 2025 (NYSCEF No. 30), and the subpoenaed records were submitted on April 30, 2025 (NYSCEF No. 36). Following oral argument, the Court reserved decision.

Page **2** of **9**

[* 2]

After careful consideration of the parties' respective submissions, Petitioners' Order to Show Cause is denied, and the Petition is dismissed for the reasons set forth more fully below.

## I.     RELEVANT BACKGROUND

On April 1, 2025, Petitioners filed their Designating Petition with the Board of Elections seeking to be delegates to the Fifth Judicial District Convention of the Conservative Party from the 126th Assembly District. (NYSCEF No. 2 [Ex. 1].)  To be on the ballot, 68 valid signatures are required. (Court's Ex. A.)  The Designating Petition consisted of ten pages and contained 84 signatures. (NYSCEF No. 2 [Ex. 1].)  On April 3, 2025, Respondent Graham filed a General Objection with the Board of Elections against Petitioners' Designating Petition that, according to the General Objection, was filed "on or about the 3 day of April, year of 2025." (NYSCEF No. 3 [Ex. 2].)  Thereafter, on April 8, 2025, Respondent Graham submitted Specifications to the Objections. (NYSCEF No. 4 [Ex. 3].)  The Specifications included the following Objections:

1)  8A:     "persons whose names are hand printed";
2)  9A:     "persons with incomplete or no residence address set forth";
3)  9B:     subscribing witness "who fails to initial modifications";
4)  10A:    "persons not registered at address set forth in petition";
5)  11A:    "persons with mailing address rather than residence address set forth"; and
6)  16A:    "persons who signed petition for office on same or earlier date."

(*Id.*) On the same date, the specifications were reviewed by the Board of Elections and its preliminary findings resulted in some of the specifications being upheld. (NYSCEF No. 5 [Ex. 4].) Specifically, the Designating Petition garnered 84 signatures, but the Board invalidated 29 signatures, leaving 55 remaining valid signatures.  (Court's Ex. A.)

On April 10, 2025, Petitioners were informed of the Board's determination that the Objections and Specifications were sustained. (NYSCEF No. 6 [Ex. 5.].)  Petitioners were further advised that a hearing had been scheduled for April 15, 2025, which was subsequently adjourned to April 22, 2025. (*Id.*)  Petitioners filed a memorandum of law dated April 21, 2025, and argued

Page **3** of **9**

that the Board incorrectly invalidated 21 signatures under Objection "11A," and the correct number of valid signatures is therefore 76. (NYSCEF No. 7 at pp. 2, 8.)   In support of their position, Petitioners set forth the following three arguments: (1) the General Objection is defective because it incorrectly identified the date that the Designating Petition was filed with the Board of Elections (i.e., "on or about" April 3, 2025, rather than April 1, 2025); (2) the Board improperly invalidated certain signatures on the Designating Petition due to the use of post office addresses; and (3) the post office/residence distinction used on the Board's petition form is too confusing, which entitled "the individuals who signed the Petition" to "validly use their Post Office Address." (NYSCEF No. 7 [Ex. 6].)   In addition, Petitioners argued that the Board of Elections erroneously applied a "strict standard of compliance," rather than a "substantial standard of compliance" when it upheld the "11A" objections. (*Id.*)

The hearing was held on April 22, 2025, at which time the Board affirmed its earlier determination.   Petitioners have largely renewed their underlying arguments in support of the instant Petition against Respondents.

## II.   DISCUSSION

### A.   The Petition Lacks the Requisite Number of Valid Signatures

The Board of Elections correctly argues that, even if the Court reverses the Board's determination regarding the 11A Objections, there are still an insufficient number of valid signatures on the Designating Petition. (NYSCEF No. 17, at p. 3-4 [Mem. of Law].)   As noted above, 21 signatures were invalidated by the Board under the 11A Objection.   These signatures appear on Volume 1, Pages 2, 3, 4, and 6 of the Designating Petition. (Court's Ex. A.)   However, on page 2, 10 signatures were invalidated under both the 11A and 9B Objections. (*Id.*)   Petitioners have not challenged the Board's invalidation of these signatures under Objection 9B, either during

[* 4]

the underlying administrative proceedings or in the instant matter (*see Boniello v Niagara Cnty Bd of Elections*, 131 AD3d 806, 807 [4th Dept 2015] ["In a proceeding to validate a designating petition, . . . "the burden of proof is on the candidate to establish that the petition is valid"]). Accordingly, the invalidation of these 10 signatures under 9B is not contested and must be upheld.

Thus, of the 21 invalid signatures being challenged, Petitioners can only succeed in restoring 11 signatures to their Designating Petition (*see Grimaldi v Bd of Elections of State*, 95 AD3d 1644, 1666-67 [3d Dept 2012] ["respondent is only challenging 60 of the signatures that Supreme Court ultimately held to be valid. Therefore, all arguments concerning the other signatures are deemed abandoned"]). As discussed above, however, the Board validated 55 signatures and the addition of 11 signatures—which would increase the total number of signatures to 66—is still less than the 68 signatures required to be placed on the ballot. Therefore, the Designating Petition does not have enough valid signatures regardless of the outcome of this proceeding and the Petition must be dismissed on this basis alone. Nonetheless, in the interest of thoroughness, the Court will still consider Petitioners' respective arguments but finds that they lack merit for the reasons below.

### B. Petitioners Failed to Comply with Election Law § 6-134(12)

Section 6-130 of the Election Law states that "[t]he sheets of a designating petition must set forth in every instance the name of the signer, his or her residence address, town or city (except in the city of New York, the county), and the date when the signature is affixed." Section 6-134(12) of the Election Law further provides as follows:

> A signature on a petition sheet shall not be deemed invalid solely because the address provided is the post office address of the signer provided that proof that such address is the accepted address of such signer is provided to the board of elections no later than three days following the receipt of specific objections to such signature.

Page **5** of **9**

[* 5]

Here, Petitioners appear to concede that the signatures that were invalidated under Objection 11A by the Board failed to meet the requirements of § 6-130 because the signatories provided only their post-office mailing addresses. (NYSCEF No. 1, at ¶¶ 18, 22 [Petition]; NYSCEF No. 20, at ¶ 8 [Reply].)  Nonetheless, Petitioners argue that invalidation was improper because, pursuant to § 6-134(12), the Board of Elections was able to identify, within three days, each signer by their voter registration number and, therefore, "Petitioners did not need to submit any additional proof." (NYSCEF No. 1, at ¶ 22 [Petition]; NYSCEF No. 20, at ¶¶ 5, 8 [Reply].) Petitioners further argue that case precedent and relevant authorities required the Board to apply a substantial compliance—as opposed to a strict compliance—standard when reviewing the challenged signatures. (NYSCEF No. 1, at ¶ 20 [Petition] [citing *Giordano v Westchester Cnty Bd. of Elections*, 153 AD3d 821 [2d Dept 2017]; *Limpert v Brandt*, 165 AD3d 1469 [3d Dept 2018]; *Marzullo v DelConte*, 165 AD3d 1466 [3d Dept 2018]; *see also Monto v Ziegler*, 183 AD3d 1294 [4th Dept 2020]).  Had the Board done so, Petitioners argue that the signatures should have been validated because the Board had the necessary voter information to identify the subject signers and their "accepted" addresses.  In other words, according to Petitioners, there was "substantial compliance" with Election Law § 6-134(12).

Respondents correctly argue that Election Law § 6-130 requires strict compliance (*see Canary v NYS Bd. of Elections*, 131 AD3d 792, 793 [3d Dept 2015] ["Strict compliance with Election Law § 6-130 is mandated, as its requirements constitute 'a matter of substance and not of form'"]; *accord Hayon v Greenfield*, 109 AD3d 920, 921-22 [2d Dept 2013]).  Therefore, when "a signer fails to accurately set forth his or her town or city on the face of the designating petition, invalidation of the signature will result" (*Canary*, 131 AD3d at 793).  The Court disagrees with Petitioners that the Board's possession and subsequent identification of the relevant voter

information for the subject signers satisfies § 6-134(12) under either a "strict" or "substantial" compliance standard. Specifically, that section states that the necessary "proof" must be "*provided to the board of elections no later than three days following the receipt of specific objections to such signature.*" (Election Law § 6-134[12] [emphasis added].) This language is unambiguous in that it requires an affirmative act on the part of a petitioner—and not the Board of Elections—to provide the necessary information to cure the defect in a signer's address.

This interpretation is consistent with case precedent. For example, in *Ligammari v Norris*, 275 AD2d 884 (4th Dept 2000), the Appellate Division, Fourth Department, held that there was no "substantial compliance" with § 6-134(12) where no "proof was provided" that a postal address was the accepted address of the signer. Similarly, in *Henry v Trotto*, 20 Misc3d 1134(A) (Sup Ct Suffolk Cnty 2008), the Supreme Court, citing *Ligammari*, held that § 6-134(12) had not been substantially complied with even though the board of elections was in possession "a registration document" containing the necessary address information because it had not been "timely submi[tted] . . . to the Board of Elections" (*id.* at *14).

Moreover, if the Court were to adopt Petitioners' argument, it would impermissibly place the burden on the Board of Elections to search its records for voter information and make discretionary determinations when reconciling errors in a signer's defective address. The Election Law does not require the Board to do so and, indeed, such a holding would be in contravention of the plain language of § 6-134(12), which, once again, requires the necessary information to be *provided* to the Board. As another court has observed, "[i]t is clearly not the Board's burden or its proper role to be making discretionary determinations, as the obvious pitfall is where will the line be drawn" (*Gabler v Cattaraugus Cnty Bd. of Elections*, 63 Misc3d 1236[A], at *3 [Sup Ct

Cattaraugus Cnty 2019] [upholding the invalidation of a signature that incorrectly listed the address of "48 Liberty Street" instead of "49 Liberty Street"]).

To be sure, Petitioners correctly point out that the Appellate Division has held that a signer's failure to comply with § 6-130 did not require invalidation where the "designating petition sets forth the signer's residence addresses within the geographical boundaries of the [subject town]" (*Giordano v Westchester Cnty Bd of Elections*, 153 AD3d 821, 822 [2d Dept 2017]; *see also Berney v Bosworth*, 87 AD3d 948 [2d Dept 2011]). However, the Court agrees with the Board of Elections (NYSCEF No. 17, at p. 9 [Mem. of Law]) that *Giordano* is inapposite because Petitioners have "not offer[ed] any method of identifying the correct town/city for the invalidated signatures from within the four corners of" their designating petition (*Ellman v Grace*, 75 Misc 3d 776, 788 [Sup Ct Albany Cnty 2022] [rejecting candidate's argument that *Giordano* was applicable where necessary information could not be discerned from four corners of the petition]).

## C. The General Objection Is Not Defective

As noted above, Petitioners filed their Designating Petition on April 1, 2025. Petitioners argue that the General Objection is defective because it incorrectly objects to a designating petition filed with the Board of Elections "on or about" April 3, 2025. (NYSCEF No. 3 [Ex. 2].) If the General Objection is defective, Petitioners argue that their Designating Petition is presumptively valid under Election Law §6-154(1). (NYSCEF No. 1, at ¶ 17 [Petition].)

Importantly, the General Objection was timely filed and identified the names of Petitioners, their public/party office, i.e., "Delegates to the 5th Judicial District 126th Assembly," and their addresses. The Court finds that the General Objection meets the requirements of Election Law § 6-154 and provided adequate notice as well as identifying information regarding Petitioners, such that there could be no mistake or confusion regarding the designating petition that was being

challenged (*cf. Hill v NYS Bd of Elections*, 22 AD3d 957 [3d Dept 2005]).  As such, the use of an "on or about" date does not vitiate the General Objection under these circumstances.

**ACCORDINGLY**, it is

**ORDERED** that the relief requested in the Order to Show Cause is **DENIED** in its entirety; and it is further

**ORDERED** that the Petition is **DISMISSED** for failure to state a cause of action.

This shall constitute the Decision and Order of the Court.  The signing of this Decision and Order shall not constitute entry or filing under CPLR § 2220.

**ENTER,**

Dated: May 1, 2025

_____
HON. KEVIN P. KUEHNER, J.S.C.